# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE           )
                            )
v.                          )     I.D. # 1604008485A
                            )
DWAYNE DUNNELL,             )
                            )
        Defendant.          )

Submitted: July 27, 2017
Decided: September 8, 2017

**Upon Defendant's Motion for Judgment of Acquittal:**
**DENIED**

This 8th day of September, 2017, upon consideration of the Motion for Judgement of Acquittal (the "Motion") filed on behalf of Dwayne Dunnell, the record in this case, and the applicable legal authorities, including Rule 29 of the Superior Court Rules of Criminal Procedure ("Rule 29"), it appears to the Court that:

1.      Dunnell was indicted for Drug Dealing in Heroin (Tier 4), Aggravated Possession of Heroin (Tier 5), Conspiracy Second Degree, Possession of a Firearm During the Commission of a Felony, Possession of a Firearm while in Possession of a Controlled Substance, Possession of Drug Paraphernalia, Possession of a Firearm by a Person Prohibited (PFBPP), and Possession of Ammunition by a

Person Prohibited (PABPP).[1] On March 3, 2017, after a four-day trial, a jury convicted Dunnell of Drug Dealing in Heroin (Tier 4), Aggravated Possession of Heroin (Tier 5), and Conspiracy Second Degree. The jury found Dunnell not guilty of the firearm and drug paraphernalia charges.

2. At trial, Detective Eugene Giallombardo of the New Castle County Police Department testified that officers executed a search warrant at the home of Kyle Dunnell, the Defendant's cousin and co-defendant. Dunnell was living with Kyle[2] when the search was conducted. Upon entering the house, officers observed that the front and back doors had chairs wedged under the doorknobs to prevent the doors from opening. Detective Giallombardo testified that during the search the officers located a locked safe under a pile of clothes in the laundry room. Inside the safe were 3,488 bags of heroin, a digital scale, a loaded Glock 9mm handgun, and ammunition. Some of the heroin bags found in the safe bore the stamp "King Kong." Officers later located a key to the safe in Kyle's pants pocket.

3. Officers found a bag of pink glassine baggies in the kitchen of the home, a pay stub with Dunnell's name on it in the laundry room, and shotgun shells in the laundry room and hall closet. The police also found $371.00 in cash and two cell phones in Dunnell's bedroom. Two more cell phones were found in

---

[1] The PFBPP and PABPP charges were severed into a "B" trial, which was presented immediately after the jury concluded its deliberations in the "A" trial. The jury found Dunnell not guilty of both charges in the B case.

[2] I use Kyle Dunnell's first name to distinguish him from the Defendant and not as a sign of disrespect.

Kyle's room. In a spare bedroom, another digital scale was located. Detective Giallombardo testified that a car, registered to Dunnell, was in Kyle's driveway. A fifth cell phone, an Alcatel flip phone, was found in the car. Dunnell told the Detective everything in the car was his, and Dunnell later did not deny the Alcatel flip phone was his when the Detective described the car's contents during Dunnell's interview. Detective Giallombardo testified he found a text message reading "King Kong" that was sent from the Alcatel flip phone at 2:54 a.m. on March 12, 2016. A photograph of the text message was presented to the jury.

4. Alia Harris, a forensic chemist, testified that the substance found in the safe was confirmed to be heroin. Detective Darryl Santry of the New Castle County Police Department testified regarding text messages that were found on the four cell phones retrieved during the search of the residence.

5. Detective Vincent Jordan of the Wilmington Police Department offered his expert opinion that the heroin found in the safe was not for personal use. Detective Jordan gave a number of reasons for this conclusion. For example, he testified it is abnormal to see drug users possessing such a large amount of heroin. Furthermore, he testified drug dealers commonly will have a firearm located near their drug supply and will barricade their homes for self-protection from other drug dealers or to delay law enforcement entry. Detective Jordan also opined that drug users often do not have large sums of money, that drug dealers

3

often do have such sums, and that drug dealers also often have one cell phone for personal use and additional cell phones for business.

6. Detective Jordan also compared the text messages found on Kyle's phone with those on the two phones found in Dunnell's bedroom and concluded that Kyle and Dunnell were working together to sell drugs. On a cell phone found in Dunnell's bedroom, there were incoming text messages from someone who, in Detective Jordan's opinion, was begging for heroin. There also was a text message on that phone that stated: "Let me call my cousin." On the other cell phone, there was a text message saying "Dread will come over." The jury heard evidence that Kyle also was known as "Dreads." Detective Jordan opined that there was drug language found in other text messages. For example, there were texts containing "1b" meaning "one bundle," "bread" meaning "money," and "40 more" meaning "$40.00 worth" or "40 bags of drugs." Based on the text messages and other factors listed above, the Detective opined Dunnell possessed more than 3,000 bags of heroin with the intent to deliver it, and Dunnell and Kyle were working together to sell drugs.

7. Dunnell now seeks judgment of acquittal as to the charges of which he was convicted, arguing the evidence adduced at trial was not sufficient to support the verdicts.[3] Specifically, Dunnell contends the safe "exclusively was possessed

---

[3] D.I. 69 at ¶ 8.

by [Kyle],"[4] and that "[a]lthough the State presented evidence in the form of cell phone text messages suggesting that . . . Dunnell was involved in several instances of drug dealing, the record is void of . . . evidence that he had knowledge of the contents of the . . . safe or access and control of the . . . safe and its contents."[5] Dunnell contends the State must present more than the mere presence of the safe, such as a connection between him and the contents of the safe, to carry its burden of proof. Dunnell therefore argues the jury improperly weighed the text message evidence. Dunnell contends the cell phone evidence was insufficient to prove beyond a reasonable doubt that he possessed the drugs in the safe, which was the conduct for which he was charged.[6]

8.      Under Rule 29, a defendant may move for judgment of acquittal to set aside a guilty verdict. In considering such a motion, all evidence and the legitimate inferences therefrom must be viewed in the light most favorable to the State.[7] If a rational jury could conclude from the evidence that the defendant is guilty beyond a reasonable doubt, the motion for acquittal shall be denied.[8]

9.      To prove Dunnell committed the crime of Drug Dealing, the State was required to prove: (1) the substance possessed in the safe was heroin, or any mixture containing heroin; (2) Dunnell possessed the substance; (3) Dunnell acted

---

[4] D.I. 69 at ¶ 4.
[5] D.I. 69 at ¶ 9.
[6] D.I. 87 at 7.
[7] *State v. Biter*, 119 A.2d 894, 898 (Del. Super. 1955).
[8] *Jervey v. State*, 637 A.2d 827 (Del. 1994).

5

knowingly; (4) Dunnell possessed 4 grams or more of the substance; and (5) when Dunnell possessed the substance, he had the intent to deliver it. The first three elements of Aggravated Possession are identical to Drug Dealing, but rather than proving the fourth and fifth elements, the State only needed to prove Dunnell possessed five grams or more of the substance. Finally, to find Dunnell guilty of Conspiracy Second Degree, the jury was required to find beyond a reasonable doubt that (1) Dunnell agreed with another person, in this case Kyle, that one or both of them would engage in conduct constituting Drug Dealing or Aggravated Possession; (2) either Dunnell or Kyle committed an overt act in pursuit of the conspiracy; and (3) Dunnell acted intentionally.

10. Dunnell challenges the sufficiency of the State's evidence regarding the elements of possession, knowledge, and, by extension, intent. Considering the record in the light most favorable to the State, the evidence was sufficient on every element of the crimes of Drug Dealing, Aggravated Possession, and Conspiracy Second Degree. That evidence included the barricaded doors in the home; the safe's location in the common area of the home; the relatively large amount of cash found in Dunnell's bedroom; the recovery of five cell phones, two of which were in Dunnell's bedroom and one of which, a "burner phone," was in a car registered to Dunnell; the reference to "King Kong" in a text message and "King Kong" stamped on bags of heroin; text messages referring to Dunnell working with Kyle

6

in response to requests for heroin; and other text messages suggesting Dunnell engaged in the drug trade with his cousin, who on the day of the search had physical possession of the key to the safe.

11. As the Court explained to the jury, the element of possession does not require the State to prove actual possession. To meet its burden, the State could prove actual or constructive possession, which includes having both the power and the intention, at a given time, to exercise control over the substance, either directly or through another person. Based on the evidence, a rational trier of fact could have concluded that Dunnell knew of the heroin in the safe and had the power and intent to exercise control over the drugs. Contrary to Dunnell's argument, the fact that the jury returned not guilty verdicts on the gun charges does not indicate the jury reached an inconsistent verdict on the drug charges or that the jury was mislead by the text messages. Unlike the drug charges, the State did not have other evidence, direct or circumstantial, that Dunnell had knowledge of the firearm in the safe or could exercise control over it. A rational jury could conclude the State proved Dunnell constructively possessed the drugs but did not constructively possess the firearm or ammunition.

For all the foregoing reasons, Dwayne Dunnell's Motion for Judgment of Acquittal is **DENIED. IT IS SO ORDERED**.

_____
Abigail M. LeGrow, Judge

Original to Prothonotary
cc:    Timothy McGuire, Deputy Attorney General
       Erika Flaschner, Deputy Attorney General
       John S. Malik, Esquire